Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| CHERIF MEDAWAR Y/O MARÍA T. GALAZ LOZANO <br><br> Querellante-Recurrente <br><br> v. <br><br> CONSEJO DE TITULARES COND. SAN JUSTO 205 <br><br> Querellado-Recurrido | KLRA202400561 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor <br><br> Querella Núm. C-SAN-2022-0010717 <br><br> Sobre: Condominio (Ley Núm. 104 de 25 de junio de 1958, según enmendada) |

Panel integrado por su presidente, el Juez Bermúdez Torres, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de enero de 2025.

El 10 de octubre de 2024, compareció Cherif Medawar (en adelante, Medawar o parte recurrente) mediante el presente Recurso de Revisión Judicial. Por medio de este, nos solicitó la revocación de la *Resolución* emitida el 5 de agosto de 2024 por el Departamento de Asuntos del Consumidor (en adelante, DACo).[1] En el dictamen, DACo declaró *No Ha Lugar* la querella y ordenó el cierre y archivo de esta. La parte recurrente solicitó *Reconsideración* el 27 de agosto de 2024 y fue declarada no ha lugar el 13 de septiembre de 2024.[2]

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

-I-

El 24 de enero de 2022, la parte recurrente presentó una querella ante DACo en contra del Consejo de Titulares del

---

[1] Apéndice III del Recurso de Revisión Judicial, págs. 21-38.
[2] Apéndice I del Recurso de Revisión Judicial, págs. 1-20.

Número Identificador

SEN2025 _____

Condominio San Justo y su Junta de Directores (en adelante, parte recurrida o Junta de Directores) por violación a la Ley Núm. 129-2020, 31 LPRA sec. 191, también conocida como la Ley de Condominios.[3]

El 16 de marzo de 2023 la parte recurrida presentó una *Solicitud de Desestimación de Querella* en donde alegó que para efectos de votación solamente debe tomarse en consideración el apartamento con mayor participación entre los apartamentos que le pertenezcan a cada titular.[4]

El 3 de abril de 2024 Medawar se opuso y enmendó la *Querella* para incluir alegaciones adicionales en contra de la parte recurrida. Argumentó que, las enmiendas realizadas por la parte recurrida al Reglamento del Condominio no fueron legalmente aprobadas, ya que, no contaron con el consentimiento unánime de los titulares y, por lo tanto, son nulas. Esto debido a que, las enmiendas al Reglamento en realidad tuvieron el efecto de enmendar la Escritura Matriz lo cual requería unanimidad.[5]

El 21 de marzo de 2024 la Junta de Directores presentó una *Solicitud de Sentencia Sumaria* en donde reiteró, entre otras cosas, su *Solicitud de Desestimación*.[6] Por su parte, el 4 de abril de 2024 Medewar presentó una *Moción en Oposición a Solicitud de Resolución Sumaria a Favor del Querellante* arguyendo que, las enmiendas al Reglamento tienen como consecuencia *de facto* modificar el uso y destino del inmueble en controversia y para ello, por virtud de ley se requiere unanimidad, por lo que solicitó una resolución sumaria a su favor.[7]

El 15 de abril de 2024 la Junta de Directores presentó *Réplica a "Moción en Oposición a Resolución Sumaria" del 4 de abril*

---

[3] Apéndice XI del Recurso de Revisión Judicial, págs.283-373.
[4] Apéndice X del Recurso de Revisión Judicial, págs. 196 -282.
[5] Apéndice IX del Recurso de Revisión Judicial, págs. 191-195.
[6] Apéndice VII del Recurso de Revisión Judicial, págs. 97-188.
[7] Apéndice VI del Recurso de Revisión Judicial, págs. 83-96.

*de 2024.*[8] Entre otras cosas arguyó que, las enmiendas no variaron el destino y uso de los cuatro apartamentos comerciales, ya que simplemente limitan las actividades comerciales permitidas en los apartamentos. No obstante, el 22 de abril de 2024 la parte recurrente presentó una *Dúplica a Solicitud de Resolución Sumaria.* Allí argumentó que, el variar el uso y destino de los apartamentos comerciales sin la unanimidad de votos exigidos por ley, es un acto contrario a derecho y, por ende, nulo.[9]

El 5 de agosto de 2024 remitida por correo el 6 de agosto de 2024, DACo emitió *Resolución Sumaria,* y declaró *No Ha Lugar* la querella. El DACo consignó 23 determinaciones de hechos y concluyó que la parte recurrente enmendó el reglamento conforme a derecho. Destacamos las primeras 14 determinaciones de hechos de la resolución sumaria:

1. La parte querellante, Cherif Medawar y/o María T. Galaz Lozano, es titular de los locales comerciales Uno (1), Dos (2), Tres (3) y Cuatro (4) del Condominio San Justo 205, en virtud de la Escritura Núm. 4 sobre Compraventa, otorgada el 20 de enero de 2012, en San Juan, Puerto Rico, ante el Notario José Orlando Mercado Gely.

2. El Condominio San Justo 205 está sometido al Régimen de Propiedad Horizontal, en virtud de la Escritura Núm. 32 sobre Conversión de Propiedad al Régimen de Propiedad Horizontal, otorgada el 30 de agosto de 1991, en San Juan, Puerto Rico, ante el Notario José A. Martínez Nacer.

3. Según la Escritura Núm. 32 de referencia, presentada por la parte querellante en la querella de epígrafe, el Condominio San Justo 205, existen cuatro (4) apartamentos en la planta baja del edificio, solo para uso comercial, identificados como local número uno (1), local número dos (2), local número tres (3), y local número cuatro (4). En la segunda planta existe un apartamento residencial identificado con la letra "A" y en la tercera planta existe un apartamento residencial identificado con la letra "B". Todos los apartamentos comerciales y residenciales forman unidades individuales, delimitadas, separadas e independientes unas de las otras, susceptibles cada una de estas unidades a pertenecer en propiedad en propiedad a uno o más propietarios, los cuales adquirirán un derecho de propiedad particular y exclusivo sobre la unidad respectiva adquirida y una participación con los demás titulares en los elementos comunes, o elementos

---

[8] Apéndice V del Recurso de Revisión Judicial, págs. 49-82.
[9] Apéndice IV del Recurso de Revisión Judicial, págs. 39-48.

comunes limitados, según sea el caso, necesario para el adecuado uso y disfrute de cada unidad.

4. Según la Escritura Núm. 4 sobre Compraventa presentada por la parte querellante de epígrafe, el Local Comercial Uno (1) del Condominio San Justo 205 tiene una participación equivalente a trece punto siete mil quinientos cuarenta y nueve por ciento (13.7549%) en los elementos comunales generales; y de treinta punto tres mil sesenta y dos por ciento (30.3062%) en los elementos comunes limitados a los apartamentos comerciales. Esta participación se hace constar en la Escritura Núm. 32 sobre Conversión de Propiedad al Régimen de Propiedad Horizontal.

El Local Comercial Dos (2) del Condominio San Justo 205 tiene una participación equivalente a diez puntos tres mil treinta y cinco por ciento (10.3035%) en los elementos comunes generales; y de veintidós punto siete mil diecisiete por ciento (22.7017%) en los elementos comunes limitados a los apartamentos comerciales. Esta participación se hace constar en la Escritura Núm. 32 sobre Conversión de Propiedad al Régimen de Propiedad Horizontal.

El Local Comercial Tres (3) del Condominio San Justo 205 tiene una participación equivalente a once puntos mil setecientos treinta y seis por ciento (11.1736%) en los elementos comunes generales; y de veinticuatro punto seis mil ciento ochenta y ocho por ciento (24.6188%) en los elementos comunes limitados a los apartamentos comerciales. Esta participación se hace constar en la Escritura Núm. 32 sobre Conversión de Propiedad al Régimen de Propiedad Horizontal.

El Local Comercial Cuatro (4) del Condominio San Justo 205 tiene una participación equivalente a diez punto mil quinientos cuarenta y cuatro por ciento (10.1544%) en los elementos comunes generales y de veintidós punto tres mil setecientos treinta ay tres por ciento (22.3733%) en los elementos comunes limitados a los apartamentos comerciales. Esta participación se hace constar en la Escritura Núm. 32 sobre Conversión de Propiedad al Régimen de Propiedad Horizontal.

5. Según la Escritura Núm. 32 sobre Conversión de Propiedad al Régimen de Propiedad Horizontal, el Apartamento "A" del Condominio San Justo 205 tiene una participación de veintinueve punto tres mil ciento ochenta y seis por ciento (29.3186%) en los elementos comunes generales y de cincuenta y tres punto seis mil ochocientos treinta y siete por ciento (53.6837%) en los elementos comunes limitados a los apartamentos residenciales.

6. Según la Escritura Núm. 32 sobre Conversión de Propiedad al Régimen de Propiedad Horizontal, el Apartamento "B" del Condominio San Justo 205 tiene una participación de veinticinco punto dos mil novecientos cincuenta y un porciento (25.2951%) en los elementos comunes generales y de cuarenta y seis punto tres mil ciento sesenta y tres por ciento (46.3163%) en los elementos comunes limitados a los apartamentos residenciales.

7. Según la clausula Vigesimosexta de la Escritura Núm. 32 sobre Conversión de Propiedad Horizontal, los

apartamentos locales comerciales se dedicarán exclusivamente para fines comerciales.

8. Para la fecha del 30 de julio de 2021, la Junta de Directores del Condominio San Justo 205, por conducto de su presidente, convocó a una Asamblea Extraordinaria para enmendar el Reglamento del Condominio.

9. El 20 de agosto de 2021, el Consejo de Titulares del Condominio San Justo 205 celebró la Asamblea Extraordinaria. En dicha reunión comparecieron los titulares de los Apartamentos A y B. La parte querellante no compareció a la Asamblea Extraordinaria.

10. En la Asamblea Extraordinaria los titulares presentes aprobaron ocho (8) enmiendas. En particular, la enmienda #7 disponía lo siguiente:

> *Owners with an apartment for commercial use may no engage in the following commercial activities: sale of alcoholic beverages, gambling and betting, casinos, brothel and/or nightclubs.*

11. Mediante comunicación enviada por correo certificado a la parte querellante, con fecha del 28 de septiembre de 2021, el Presidente de la Junta de Directores del Condominio San Justo 205 notificó la minuta de la Asamblea Extraordinaria del 20 de agosto de 2021. En dicha misiva, se le apercibió a la parte querellante del término de treinta (30) días para exponer su posición sobre cada una de las enmiendas al Reglamento aprobadas por el Consejo de Titulares.

12. Posteriormente, con fecha del 24 de noviembre de 2021, la parte querellante le presentó al Consejo de Titulares del Condominio San Justo 205 su oposición en relación a cada enmienda al Reglamento aprobada en la Asamblea Extraordinaria y dicha aprobación fue contraria a la Ley de Condominios toda vez que no cumplió con el requisito de las dos terceras (2/3) partes de los titulares con participación en los elementos comunes del Condominio, por solamente reunir el cincuenta y cuatro punto seis mil ciento treinta y siete por ciento (54.6137%) de la participación de los titulares.

13. Con fecha del 20 de diciembre de 2021, la parte querellante recibió una comunicación del Presidente de la Junta de Directores, vía correo certificado 7021-0950-0000-6013-2480, en la que afirmó que la aprobación de las enmiendas al Reglamento de Condominios fueron conforme a la Ley de Condominios vigente y al Código Civil de Puerto Rico y que se configuró el quorum requerido conforme a la Sección 2.8 del Reglamento del Condominio San Justo 205.

14. El 27 de diciembre de 2021, la parte querellante recibió en su correo postal la carta certificada del Presidente de la Junta de Directores del Condominio San Justo 205, con fecha del 20 de diciembre de 2021.

En desacuerdo con el resultado, el 26 de agosto de 2024 la parte recurrente presentó ante DACo una *Moción de*

*Reconsideración*, la cual fue declarada *No Ha Lugar* el 13 de septiembre de 2024.

Inconforme, el 10 de octubre de 2024 la parte recurrente compareció ante este tribunal e imputa la comisión de los siguientes errores:

> Primer Error: Erró DACO al no aplicar el derecho vigente en cuanto a las enmiendas que afectan el uso y destino estipulado en la Escritura Matriz requieren unanimidad por virtud de ley.
>
> Segundo Error: Erró DACO al determinar que la Enmienda #7 no requiere unanimidad por no cambiar el uso y destino de los apartamentos comerciales ignorando que la Enmienda restringe el uso irrestricto comercial otorgado por la Escritura Matriz.
>
> Tercer Error: Erró DACO al determinar que la Enmienda #7 solo amplió las restricciones de convivencia social ya reconocidas y contempladas en el Reglamento del Condominio, ignorando que el verdadero efecto de dicha enmienda es imponer limitaciones al uso y destino comercial de los apartamentos que no estaban previstas en la Escritura Matriz.
>
> Cuarto Error: Erró DACO al determinar que las restricciones de convivencia social pueden irse por encima de los derechos propietarios otorgados por virtud de la Escritura Matriz.
>
> Quinto Error: Erró DACO al aplicar el Artículo 15 de la Ley de Condominios.

Con el beneficio de la posición de las partes, resolvemos.

### -II-

### -A-

En nuestro ordenamiento jurídico, las decisiones de las agencias administrativas están investidas de una presunción de legalidad y corrección. *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *García Reyes v. Cruz Auto Corp.,* 173 DPR 870, 893 (2008). Lo anterior se fundamenta en el conocimiento especializado y la experiencia (*expertise*) sobre las leyes y reglamentos que administra. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 436 (1997); *Misión Ind. P.R. v. JP y AAA*, 142 DPR 656, 672-673 (1997).

Por lo que, en virtud de nuestro ejercicio de revisión judicial, debemos gran deferencia a las decisiones emitidas por los foros administrativos. *Pérez López v. Dpto. Corrección*, 208 DPR 656, 673-674 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021). Los dictámenes de las agencias gozan de una presunción de legalidad y corrección que subsiste mientras no se produzca suficiente prueba para derrotarla. *OEG v. Martínez Giraud,* 210 DPR 79, 88-89 (2022); *AAA v. UIA*, 200 DPR 903, 910 (2018).

Dentro de este contexto, la revisión judicial se limita a determinar si la agencia actuó de forma arbitraria, ilegal, o tan irrazonable que implique abuso de discreción. *OCS v. Point Guard Ins.,* 205 DPR 1005, 1026-1027 (2020); *Rivera Concepción v. ARPe.*, 152 DPR 116, 122 (2000). Esto significa que, el tribunal respetará el dictamen de la agencia, salvo que no exista una base racional que fundamente la actuación administrativa. *ECP Incorporated v. OCS*, 205 DPR 268, 282 (2020); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 134-135 (1998). Así, la revisión judicial suele limitarse a determinar si: (1) el remedio concedido por la agencia fue el apropiado; (2) las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. *Pacheco v. Estancias,* 160 DPR 409, 431 (2003).

Ahora bien, esa presunción de legalidad no constituye un dogma inflexible que, impida la revisión judicial si no existen las condiciones que sostienen la deferencia. En el caso de *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), el Tribunal Supremo de Puerto Rico se expresó sobre el alcance de la revisión judicial y mencionó lo siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha

encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

Por ende, como norma general, el tribunal revisor debe respeto y deferencia al dictamen administrativo. No obstante, si el foro revisor entiende que uno de estos factores está presente, podrá entonces modificar la decisión. De lo contrario, se abstendrá a ello. Es pertinente enfatizar que, la doctrina no exige que la agencia tome la mejor decisión posible, sino que el criterio a evaluar es si la misma, dentro de las circunstancias particulares del caso, es razonable. *De Jesús v. Depto. Servicios Sociales*, 123 DPR 407, 417-418 (1989). Por ende, si existe más de una interpretación razonable de los hechos, ordinariamente se avalará la decisión del foro administrativo. *Super Asphalt v. AFI y otros*, *supra*, a la pág. 819; *Torres Rivera v. Policía de PR*, *supra*, a la pág. 628.

En lo concerniente al alcance de la revisión judicial, la sección 4.5 de la de Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9675, limita la discreción del tribunal revisor sobre las determinaciones de hecho que realiza la agencia administrativa. 3 LPRA sec. 9675. Como consecuencia, la revisión judicial de los tribunales para determinar si un hecho se considera probado o no se limita conforme la siguiente norma:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. *Id*.

El Tribunal Supremo de Puerto Rico define el concepto de evidencia sustancial como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero v. Toyota*, 163 DPR 716, 728 (2005); *Misión Ind. P.R. v. J.P., supra*, pág. 131. Además, reiteró:

> Para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial es necesario que la parte afectada demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración.

Por tal razón, es la parte que impugna la decisión administrativa quien tiene que producir evidencia de tal magnitud que conmueva la conciencia y tranquilidad del juzgador, de forma que éste no pueda concluir que la decisión de la agencia fue justa, porque simple y sencillamente la prueba que consta en el expediente no la justifica. Ello implica que "[s]i en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hecho de la agencia deben ser sostenidas por el tribunal revisor". *Domínguez v. Caguas Expressway Motors, supra*, pág. 398; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999).

La Ley de Procedimiento Administrativo Uniforme faculta a las entidades administrativas a disponer de los asuntos ante su consideración mediante resolución sumaria, salvo que su ley orgánica disponga lo contrario. Este mecanismo procesal persigue agilizar el proceso adjudicativo en casos en los que no estén presentes hechos materiales en controversia. Comisionado de *Seguros de PR v. Universal Insurance Company*, 187 DPR 164, 177 (2012). En particular, la Sección 3.7 de la LPAU, 3 LPRA § 9647, dispone expresamente lo siguiente:

(a)  [...]

(b)  Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final, o parcial resolviendo cualquier controversia entre las partes, que sean separable de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.

La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que:

(1)  existen hechos materiales o esenciales controvertidos;

(2)  hay alegaciones afirmativas en la querella que no han sido refutadas;

(3)  surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o

(4)  como cuestión de derechos no procede.

### -B-

La Ley Núm. 129 de 16 de agosto de 2020, también conocida como la "Ley de Condominios de Puerto Rico, según enmendada, 31 LPRA sec. 1921, fue promulgada con el propósito de establecer un régimen jurídico que facilite la vida en convivencia dentro de un área restringida de viviendas. *Exposición de Motivos*, Ley Núm. 129-2020. Como parte del funcionamiento ordenado que debe permear en el régimen de propiedad horizontal, es menester señalar que el titular de un apartamento sometido al Régimen de Propiedad Horizontal tiene el derecho al pleno disfrute de su apartamento y de las áreas comunes, siempre que con ello no menoscabe el derecho de los demás titulares al disfrute de sus respectivas propiedades. 31 LPRA 1921a.

Ahora bien, el artículo 48 de la precitada ley, destaca la finalidad del Consejo de Titulares:

El Consejo de Titulares constituye la autoridad suprema sobre la administración del inmueble sometido al Régimen de Propiedad Horizontal. Estará integrado por todos los titulares. Sus resoluciones y acuerdos, adoptados en

> asambleas debidamente convocadas y constituidas, serán de ineludible cumplimiento por todos y cada uno de los titulares, ocupantes o residentes y demás personas que se relacionen con el condominio.
>
> El Consejo de Titulares tendrá personalidad jurídica propia y de sus obligaciones frente a terceros, responderán los titulares de forma subsidiaria y sólo con su apartamento. [...]
>
> 31 LPRA sec. 1922t. (Énfasis suplido.)

El Tribunal Supremo de Puerto Rico ha destacado que "[l]a responsabilidad fundamental de la Junta de Directores "estriba en velar por el buen funcionamiento del condominio logrando que se ejecuten las disposiciones de la Ley de Propiedad Horizontal, la de la Escritura Matriz, del Reglamento del Condominio, así como los acuerdos que se hayan aprobado en reuniones debidamente convocadas por el Consejo de Titulares". M.J. Godreau, *Personalidad jurídica, legitimación activa y propiedad horizontal: capacidad legal de la Junta de Directores y del presidente para llevar acciones a nombre del condominio*, 64 (Núm. 3) Rev. Jur. UPR 481, 481 (1995). *Consejo Titulares v. Gómez Estremera*, 184 DPR 407, 418 (2012)

El Consejo de Titulares está definido como el "[ó]rgano rector y deliberativo del condominio, con personalidad jurídica y constituido por todos los titulares". 31 LPRA sec. 1921h. Es decir, el Consejo de Titulares está integrado por todos los titulares y constituye la autoridad suprema sobre la administración del inmueble sometido al régimen de propiedad horizontal. Este goza de personalidad jurídica y por medio de su existencia hace viable la administración de las áreas comunes del inmueble por todos los titulares. A tenor con lo anterior, la finalidad del Consejo de Titulares consiste en propender al mejor funcionamiento del sistema de propiedad horizontal, a la vez que protege los intereses de sus miembros; es decir, el de los titulares frente a la comunidad

y a terceros. *Consejo Titulares v. Ramos Vázquez,* 186 DPR 311,326 (2012).

### -III-

Las partes no disputan las determinaciones de hechos contenidas en la resolución recurrida. Pudimos verificar que, todas están fundamentadas en evidencia admisible que obra en el expediente. Por tanto, la controversia queda reducida a una cuestión de puro derecho.

El Condominio San Justo 205 es un edificio de naturaleza mixta, está compuesto de apartamentos comerciales y residenciales. Los hechos que dan origen a esta controversia surgen luego de notificado el resultado de cierta reunión extraordinaria en la cual dos de los tres titulares del condominio votaron a favor de ocho enmiendas al reglamento del condominio, entre ellas la disputada por la parte recurrente. La enmienda, entre otras cosas, prohíbe la venta de bebidas alcohólicas en los apartamentos destinados a uso comercial.

Desde el punto de vista de la parte recurrente, esto constituye una limitación *ultra vires* al disfrute de su propiedad, los cuatro apartamentos destinados a comercios en la primera planta del condominio. Esto debido a que, según razona, la escritura constitutiva del condominio plasmó de forma general y amplia el uso y destino de los apartamentos al comercio, que según el recurrente no admite la exclusión de venta de bebidas, salvo acuerdo unánime entre los condóminos para enmendar la escritura del condominio.

Empero, la parte recurrida objeta el argumento al asegurar que, el único procedimiento necesario para limitar el uso de los apartamentos del recurrente era la enmienda al reglamento que, solo requiere un tercio del voto del total de titulares que también reúnan un tercio de la participación en los elementos comunes. La

parte recurrida añade que, en todo caso, el recurrente estaba impedido de objetar las enmiendas pues **no** notificó su descontento dentro del término de treinta días dispuesto en la Ley de Condominios de Puerto Rico.

Es norma establecida que cualquier alegado acto de administración del Consejo de Titulares no puede contravenir la Ley de Condominios de Puerto Rico, y el título constitutivo del régimen del Condominio San *Justo. Brown III v. J.D. Cond. Playa Grande,* 154 DPR 225, 238 (2001).

Precisamente el motivo por el cual el recurrente presentó una querella ante el DACo son unas supuestas acciones ilegales del Consejo de Titulares al enmendar el reglamento. La postura de la parte recurrente es que, las enmiendas efectuadas al reglamento son contrarias a la Ley de Condominios de Puerto Rico, y a la escritura matriz del Condominio San Justo 205.

Para este tipo de reclamación, el Art. 65 de la Ley de Condominios de Puerto Rico, 31 LPRA sec. 1923j, dispone un término prescriptivo de dos años "a partir de la fecha en que se tomó la acción, omisión o acuerdo si fue en la presencia del titular o a partir de la notificación de este si no fue en su presencia".

En consecuencia, según las fechas que surgen del expediente, el recurrente presentó su querella ante el DACo previo a expirar el término dispuesto por ley para su petitorio.

La escritura matriz constituye "la fuente vinculante para los condóminos, luego de la Ley". M.J. Godreau, *El condominio: el régimen de propiedad horizontal en Puerto Rico,* 1ra ed., Río Piedras, Ed. Dictum, 1992, pág. 71. Es un estatuto privado, al cual se adhieren los titulares cuando compran sus respectivos apartamentos que gobierna a los condóminos o titulares y a cuyas disposiciones debemos acudir para dirimir cualquier conflicto, a menos que tales disposiciones violen la ley, la moral o el orden

público. *Consejo Tit. Cond. McKinley Court v. Rullán*, 126 DPR 387, 394 (1990) *Consejo de Titulares v. Vargas*, 101 DPR 579, 582 (1973); *Soto Vázquez v. Vázquez Torres*, 138 DPR 282 (1995). La escritura matriz forma un estado de derecho que ha de ser aceptado por los sucesivos titulares a medida que éstos adquieran sus apartamentos en el régimen. *Bravman, González v. Consejo Titulares Real*, 183 DPR 827, 845 (2011). Ésta constituye la "fuente vinculante para los condóminos, luego de la Ley". Godreau, *op. cit.*, pág. 71.

El Art. 2 de la Ley de Condominios de Puerto Rico, 31 LPRA sec. 1921a, establece la política pública respecto al régimen de propiedad horizontal:

> Este capítulo se aprueba con el propósito, entre otros, de viabilizar la propiedad individual sobre un apartamento, que forma parte de un edificio o inmueble sometido al Régimen de Propiedad Horizontal, de acuerdo con los criterios que más adelante se establecen.
>
> El titular de un apartamento sometido al Régimen de Propiedad Horizontal tiene el derecho al pleno disfrute de su apartamento y de las áreas comunes, siempre que con ello no menoscabe el derecho de los demás titulares al disfrute de sus respectivas propiedades.
>
> Cada titular reconoce que el ejercicio del dominio en el Régimen de Propiedad Horizontal está limitado por los derechos de los demás titulares y que el derecho de propiedad sobre su apartamento tiene que ejercerse dentro del marco de la sana convivencia y el respeto al derecho ajeno.
>
> En el ejercicio y el reclamo de sus derechos, los titulares actuarán conforme a los principios de la buena fe, de la prohibición de ir en contra de sus propios actos y la del abuso del derecho.

Esto, en si mismo, constituye una limitación de las facultades inherentes al uso y disfrute de cada apartamiento en interés de la colectividad. E. Vázquez Bote, *Derecho Civil de Puerto Rico*, San Juan, Eds. FAS, 1974, T. II, pág. 275. Por ello, el legislador impuso ciertas limitaciones a la libertad a los propietarios al constituir un régimen de propiedad horizontal sobre una edificación. *Cond. Prof. S.J.H. Centre v. P.R.F., Inc.*, 133 DPR

488, 502 (1993). A tales efectos, exigió que, la escritura que establezca el Régimen de Propiedad Horizontal expresare clara y precisamente el destino y uso de toda área comprendida en el inmueble. 31 LPRA sec. 1921c. En específico la Ley de Condominios de Puerto Rico requiere:

(a) Descripción del terreno y descripción general de lo allí construido, con expresión de sus respectivas áreas y materiales de construcción.

(b) Descripción de cada apartamento y número de cada uno, con expresión de sus medidas, situación, piezas de que conste, puerta principal de entrada y lugar con el cual inmediatamente comunique, y demás datos necesarios para su identificación.

(c) Descripción de los elementos comunes generales del inmueble y, en su caso, de los elementos comunes limitados a cierto número de apartamentos, con expresión de cuáles sean esos apartamentos.

(d) **Indicación clara del destino dado al inmueble y a cada uno de sus apartamentos, con expresión de las restricciones que tenga tal uso**.

(e) Superficie de la totalidad de los apartamentos en el inmueble y superficie de cada apartamento, fijándose de acuerdo con estas medidas el porcentaje que tengan los propietarios en los gastos, ganancias y derechos en los elementos comunes.

(f) Lo relativo a la administración del inmueble, en su caso.

(g) Cuanto más se refiere al inmueble y sea de interés hacerlo constar.

Art. 12, Ley de Condominios de Puerto Rico, 31 LPRA sec. 1921k. (Énfasis nuestro.)

Al constituir el régimen horizontal sobre el Condominio San Justo 205 el propietario primitivo cumplió con especificar, de forma clara y precisa, el uso destinado para cada apartamento en la Escritura Matriz, y especificó otros en el Reglamento, el cual insertó en la escritura e hizo formar parte de la Escritura Matriz. Art. 13, Ley de Condominios de Puerto Rico, 31 LPRA sec. 1921*l*;[10]

---

[10] El. Artículo 13 lee: "La administración de todo inmueble constituido en propiedad horizontal se regirá por lo dispuesto en este capítulo, y además por un reglamento que deberá insertarse en la escritura de su constitución, o que se agregará a dicha escritura. Copia certificada de dicha escritura y del reglamento, y de toda enmienda a los mismos, deberá quedar archivada en el Registro de la Propiedad".

*Cond. Prof. S.J.H. Centre v. P.R.F., Inc.*, 133 DPR 488, 502-503 (1993).

En consecuencia, los titulares del Condominio San Justo 205 al comprar sus respectivos apartamentos llevaron a efecto un claro acto de adhesión a lo estipulado en la Escritura Matriz, y el Reglamento del condominio.

Ahora bien, el Reglamento del Condominio San Justo 205 puede contener todas aquellas normas y reglas en torno al uso del inmueble y sus apartamentos, ejercicios de derechos, instalaciones y servicios, gastos, administración y gobierno, seguros, conservación y reparaciones, que no contravengan las disposiciones de la Ley de Condominios de Puerto Rico, y su propia Escritura Matriz. Art. 14, Ley de Condominios de Puerto Rico, 31 LPRA sec. 1921m.

Inclusive, la Ley de Condominios de Puerto Rico es aún más específica sobre un inmueble que contenga o haya de contener apartamentos destinados a vivienda con apartamentos destinados a usos no residenciales. En tales supuestos, la Ley de Condominios de Puerto Rico exige que, en el reglamento conste ¨[t]odas aquellas medidas y restricciones que sean necesarias para garantizar la paz y tranquilidad de los ocupantes de apartamentos residenciales, especialmente fuera de horas laborables". Art. 15, Ley de Condominios de Puerto Rico, 31 LPRA sec. 1921n(c).

La Ley de Condominios de Puerto Rico establece claramente la forma establecida para enmendar el Reglamento del Condominio San Justo 205:

> En cualquier momento, el titular único del inmueble o, si hubiere más de uno (1), dos terceras (2/3) de todos los titulares, que a su vez, reúnan dos terceras (2/3) partes de las participaciones en las áreas comunes, podrán modificar el reglamento, pero siempre deberá quedar regulado cada extremo de los comprendidos en esta sección. La modificación tendrá que constar en escritura pública y, además, se presentará para su

inscripción en el registro particular de la finca matriz, dejándose archivada en el Registro de la Propiedad copia certificada, según dispone la sec. 19211 de este título.

Art. 14, Ley de Condominios de Puerto Rico, 31 LPRA sec. 1921m.

En cuanto al uso y destino de toda área comprendida en el Condominio San Justo 205, el artículo 4 de la Ley de Condominio de Puerto Rico, 31 LPRA sec. 1921c, establece:

> La escritura que establezca el Régimen de Propiedad Horizontal expresará clara y precisamente el destino y uso de toda área comprendida en el inmueble, excepto que este capítulo autorice lo contrario, **una vez fijado dicho destino y uso sólo podrá ser variado mediante el consentimiento de dos terceras partes (2/3) de todos los titulares, que a su vez, reúnan dos terceras partes (2/3) de las participaciones en las áreas comunes**, excepto las modificaciones a la escritura matriz, con el fin de variar el uso de un apartamento de uno residencial a uno no residencial o viceversa, requerirán del consentimiento unánime de todos los titulares. Las disposiciones de variaciones de destino y uso en esta sección, con relación al número de votos requeridos, no se aplicarán a los inmuebles sometidos al Régimen de Propiedad Horizontal previo a la aprobación de esta ley, los cuales sólo se podrán modificar por unanimidad de los titulares. (Énfasis nuestro.)

La única excepción al voto terciario es para el cambio del uso de un apartamento residencial a comercial, o viceversa. Tal enmienda solo puede ocurrir mediante unanimidad en el voto de los titulares. Empero, en cuanto a variar el uso de un apartamento solo es necesario el voto a favor de dos tercios de los condóminos que igualmente reúnan dos terceras partes de las participaciones en las áreas comunes del Condominio San Justo 205.

Ambos supuestos quedaron cumplidos en la reunión extraordinaria efectuada por el Condominio San Justo 205 para enmendar el reglamento del inmueble. Según detalló el foro recurrido, en aquella reunión participaron dos terceras partes de los titulares que igualmente poseían dos tercios en la participación de los elementos comunes del edificio.

Como vimos, la Ley de Condominios de Puerto Rico no dispone usos particulares, ni categoriza los usos a los que pueden

destinarse los apartamentos particulares susceptibles de aprovechamiento individual. Tal determinación queda a la sana discreción del propietario o propietarios que someten el inmueble al Régimen de Propiedad Horizontal, salvando las disposiciones respecto a las leyes, a la moral y al orden público. *Cond. Prof. S.J.H. Centre v. P.R.F., Inc.,* 133 DPR 488, 503-504 (1993).

Basta con que se precisen e identifiquen claramente ciertas clases de usos en términos amplios, y por definiciones de categorías como vivienda o uso comercial, *y que informen debidamente y sin ambigüedades* a los nuevos adquirentes y terceros, para que éstos sepan a qué atenerse con respecto a los usos previstos para los diversos apartamientos susceptibles de aprovechamiento individual que conforman el inmueble. F. Hernández Denton, *La Ley de Propiedad Horizontal: un análisis de las enmiendas de 1976,* 44 Rev. C. Abo. P.R. 257, 275 (1983); Véase, *Consejo Tit. C. Parkside v. MGIC Fin. Corp.,* 128 DPR 538 (1991).

Ahora bien, el hecho de que la ley permita una particularización del uso en términos amplios o por definiciones de naturaleza categórica no implica que el Condominio San Justo 205 no pueda consignar el uso o destino de los apartamentos en términos más específicos. *Cond. Prof. S.J.H. Centre v. P.R.F., Inc.,* 133 DPR 488, 504 (1993).

En resumidas cuentas, el Condominio San Justo 205 utilizó correctamente las formas establecidas en la Ley de Condominios de Puerto Rico para enmendar el reglamento del inmueble y delimitar el uso de los apartamentos destinados a uso comercial. Es nuestro parecer que, tales enmiendas son cónsonas con la política pública del propio estatuto que busca garantizar el buen sosiego y tranquilidad en los apartamentos residenciales cuando convergen con sus contrapartes comerciales en un condominio.

En el balance de intereses propietarios el legislador quiso proteger de manera especial a los residentes del condominio sobre el interés comercial del propietario del negocio. Por ello, contempló las herramientas procesales antes colegidas que permitieron a los titulares de los apartamentos A y B proteger el tranquilo disfrute de sus propiedades.

La parte recurrente, está obligado por el estado de derecho que crea la escritura matriz del Condominio San Justo 205 y el reglamento insertado a esta, según enmendado.

### *-IV-*

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, *confirmamos* la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones